[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO VACATE ARBITRATION AWARD
The arbitrator found the following facts. (Plaintiff's Exhibit B, Arbitration Award.) On June 22, 1984, the plaintiff, People's Bank, loaned $120,000 to the defendants, Douglas and Marjorie Perkins. To provide security for this loan, the defendants executed a mortgage on certain real estate located at 33 Cedar Hill Lane in Easton, Connecticut. As part of the closing transaction, the defendants were provided with a document known as a Statement Regarding Flexible Rate Mortgage Loan. The CT Page 13283 defendant's attorney explained the details concerning the changes that could occur in the mortgage rate.
Prior to the closing, the defendants were also provided with a Truth In Lending Disclosure Statement. This document listed an Annual Percentage Rate of 11%. Additionally, the document contained a box that was checked indicating that the mortgage had a variable rate. This document stated the following:
 This is a Flexible Rate Mortgage. People's may increase your interest rate during the term of this mortgage if the index increases. The index is the weekly average yield on United States Treasury securities adjusted to a constant maturity of 1 year, as made available by the Federal Reserve Board plus 2.00 percentage points. People's may not increase your rate more than once each year.
The promissory note at issue states: "Beginning with the first Change Date, my interest rate will be based upon an index." The terms of the promissory note indicate an initial interest rate of 10.75% per year.
The defendants first defaulted in their payment obligations in August of 1985. Despite a subsequent forbearance agreement entered into with the plaintiff, the defendants thereafter failed to make the mortgage payments. The defendants filed for bankruptcy under Chapter 13 of the United States Bankruptcy Code,11 U.S.C. § 1301 et seq. The bankruptcy court confirmed a reorganization plan in which the defendants remained obligated to make payments on the mortgage. The defendants, however, failed to make those payments.
On January 18, 1994, the plaintiff filed a foreclosure action against the defendants. On or about May 6, 1998, the parties agreed to submit their claims to arbitration. On February 25, 1999, the arbitrator rendered a decision in favor of the plaintiff, and ordered a foreclosure of the property. On March 23, 1999, the defendants filed a motion to vacate the arbitration award on the ground that the contract is void because there was no mutual assent to the terms of the contract.[1] On March 29, 1999, the plaintiff filed an application to confirm the arbitration award.
Ordinarily, arbitration is a creature of contract whereby the CT Page 13284 parties themselves, by agreement, define the powers of the arbitrators. American Universal Ins. v. DelGreco, 205 Conn. 178,185, 530 A.2d 171 (1987). Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrator through their submission, then the scope of judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statutes § 52-418. American Universal Ins. v. DelGreco, supra. If the parties restrict the authority of the arbitrators by including in their arbitration agreement a proviso that the arbitrators' award must not be contrary to law, the court is bound to enforce that the restriction. Bodner v. United Services Automobile Assn.,222 Conn. 480, 490, 610 A.2d 1212 (1992).
Here, the arbitration agreement provides that the arbitrator
 "shall be the sole judge of the relevancy, credibility and weight of the evidence and arguments presented in the arbitration; provided however, the rules of evidence shall be applied by the Arbitrator as to all disputed evidentiary matters, and provided further that the rulings of the Arbitrator in connection with such disputed evidentiary matters and the legal conclusions reached by the Arbitrator shall be subject to Appellate review as hereinafter provided." (Arbitration Agreement, par; 2.)
The arbitration agreement further provides that "[t]he submission of the claim to Arbitration by the parties, therefore, is limited insofar as the parties reserve their rights to Appellate review of all legal issues raised in their respective Motion to Vacate as provided for herein."[2] (Arbitration Agreement, ¶ 9.)
The parties have expressly delegated to the arbitrator the sole power to make factual determinations. However, the parties have reserved their appellate rights with regard to legal issues. Therefore, the court's review in the present case is limited to determining whether the arbitrator's legal conclusions are supported by the facts stated in the arbitrator's memorandum of decision. See Bodner v. United Services Automobile Assn., supra,222 Conn. 490.
The defendants argue that the contract is void because there was no mutual assent to the terms of the contract. Specifically, CT Page 13285 the defendants argue that the contract is void because the plaintiff should have disclosed that the initial interest rate was a deceptively low "teaser" rate that was not calculated in the same way that future rates were to be determined).[3]
The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence. To form a valid and binding contract in Connecticut, there must be a mutual understanding of the terms that are definite and certain between the parties. To constitute an offer and acceptance sufficient to create an enforceable contract, each must be found to have been based on an identical understanding by the parties. If the minds of the parties have not truly met, no enforceable contract exists. L R Realty v. Connecticut National Bank,53 Conn. App. 524, 535, ___ A.2d ___ (1999).
Here, the contract between the parties unambiguously disclosed that the mortgage rate could vary. In fact, the promissory note expressly provided that the mortgage rate could change, and disclosed the manner in which future mortgage rate calculations were to be made. Also, from the defendants' testimony, the arbitrator concluded the defendants' attorney explained the details concerning the changes that could occur in the rate of the mortgage. The arbitrator found that the defendants appeared to understand that the interest rate of the mortgage could vary. Based upon these findings of fact, the arbitrator properly concluded that the mortgage agreement was a valid contract. Accordingly, arbitrator's finding that the mortgage agreement was a valid contract was legally correct.
For the foregoing reasons, the motion to vacate the arbitration award is hereby denied.
MELVILLE, J.